UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TABATHA L. JONES,

      Plaintiff,

  v.                                        17-CV-434
                                              DECISION AND ORDER
NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

      Defendant.

On May 18, 2017, the plaintiff, Tabatha L. Jones, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On May 11, 2018, Jones moved for judgment on the pleadings, Docket Item 15, and on August 27, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 23. On September 17, 2018, Jones replied. Docket Item 24.

For the reasons stated below, this Court denies Jones's motion and grants the Commissioner's cross-motion.

## BACKGROUND

**I.   PROCEDURAL HISTORY**

On March 18, 2013, Jones initially applied for Supplemental Security Income and Disability Insurance Benefits. Tr. 101-02. She completed her applications on April 12,

2013, Tr. 157, 163, claiming that she had been disabled since March 1, 2011, due to back pain, diabetes, and mental health impairments, Tr. 27, 75, 80.

On July 19, 2013, Jones received notice that her applications were denied because she was not disabled under the Act. Tr. 109-14. She requested a hearing before an administrative law judge ("ALJ"), Tr. 115, which was held on May 20, 2015, Tr. 44. The ALJ then issued a decision on October 1, 2015, determining that Jones was not disabled prior to April 12, 2013, but became disabled on that date and was continuously disabled through the date of her decision. Tr. 27, 38. Jones appealed the ALJ's decision, but her appeal was denied, and the decision then became final. Tr. 1-3. On May 18, 2017, Jones filed this action, asking this Court to review the ALJ's decision. Docket Item 1.

## II.  THE ALJ'S DECISION

In considering Jones's application, the ALJ evaluated Jones's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any of the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If a claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined at step one that Jones had not engaged in substantial gainful activity since the alleged onset date. Tr. 29. At step two, the ALJ

3

found that Jones had the following severe impairments: "degenerative disc disease; diabetes mellitus; migraines; hypertension; depressive disorder; and anxiety disorder." *Id.* At step three, the ALJ determined that these severe impairments did not meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

In assessing Jones's RFC, the ALJ determined that before April 12, 2013, Jones had the RFC to perform a less-than-full range of light work, as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b).[1]  Specifically, the ALJ determined that Jones could

> lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; sit six hours during an eight-hour workday; stand and/or walk six hours during an eight-hour workday, alternating after 30 minutes to sitting for 10 minutes; occasionally balance, stoop, kneel, crouch, and crawl; perform work that does not involve exposure to weather, to extreme cold, or to hazards such as unprotected heights or moving machinery. Further, she could: understand, remember and carry out simple instructions and tasks; maintain attention and concentration sufficient for such tasks with customary breaks; work in a low-stress environment (meaning one that does not involve supervisory responsibilities, does not require more than occasional independent decision-making with respect to simple work-related decisions, and does not involve frequent changes in work routines or settings); and occasionally interact with the general public.

Tr. 30. Regarding Jones's mental impairments, the ALJ rested his conclusions in part on "a minimal history of psychiatric treatment from her alleged onset date in March 2011 until April 2013." Tr. 31. The ALJ suggested that before Jones's alleged onset date, she had seriously debilitating mental impairments in 2010 when she was admitted to

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

treatment at Horizon Health, a mental health services provider.  *Id.*  But the ALJ determined that by March 2011, Jones "showed marked improvement in her affect and mood."  *Id.*  In fact, although she was told to continue one-on-one sessions, she "stopped attending them at the end of March 2011."  *Id.*  Horizon discharged her as a patient in June 2011 "after receiving no contact from [Jones] despite repeated attempts to contact her by telephone and letter."  *Id.*  The record included no treating source opinions regarding Jones's mental health between her discharge as a Horizon patient in June 2011 and her return to treatment there in 2013.  Tr. 31-32.

In considering the impact of Jones's mental impairments on her RFC, the ALJ relied on the opinion evidence of Susan Santarpia, Ph.D., a consultative psychologist, who had examined Jones in February 2011.  Tr. 32.  Dr. Santarpia found Jones to have only a mild impairment in performing complex tasks independently.  *Id.*  The ALJ assigned Dr. Santarpia's opinion "great weight."  *Id.*  Furthermore, the ALJ relied on the opinion of a state-agency psychiatrist, Dr. Ted Andrews, who reviewed the record and determined in March 2011 that Jones was only moderately limited in her mental capabilities.  *Id.*  The ALJ assigned Dr. Andrews's opinion "significant weight."

The ALJ found that as of April 2013, Jones's RFC remained about the same except that Jones could maintain attention and concentration sufficient to understand, remember, and carry out simple instructions and tasks only if at least ten percent of her workday could be spent off-task.  Tr. 34.  The ALJ also found that before April 12, 2013, Jones had the RFC to "occasionally interact with the general public," Tr. 30, but beginning April 12, 2013, Jones had the RFC only to "have occasional incidental contact

5

with coworkers but rarely work in coordination with them; and rarely have contact with the general public," Tr. 34.

The ALJ based this decision, at least involving the changes in Jones's mental health, on "[p]sychiatric treatment notes after April 2013 [that] indicate consistent complaints and positive clinical findings." *Id*. Additionally, the ALJ relied on "opinion evidence [that] supports a finding that the claimant's mental impairments worsened and her mental functional capacity declined in 2013." *Id*.

At step four, the ALJ determined that since March 1, 2011, the alleged onset date, Jones had been unable to perform any past relevant work. Tr. 36. The ALJ concluded, however, that between March 1, 2011, and April 12, 2013, "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." Tr. 37. Specifically, the ALJ determined that Jones could have performed work as a "document preparer." *Id*. The ALJ then concluded that beginning on April 12, 2013, there were no jobs in the economy that Jones could perform. Tr. 38.

## **LEGAL STANDARDS**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring that the court is "satisfied that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at

6

985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles."  *Johnson*, 817 F.2d at 986.

## DISCUSSION

Jones argues that the ALJ erred in three ways.  Docket Item 15-1 at 16-27.  First, she argues that the ALJ failed to properly evaluate the opinions of Drs. Santarpia and Andrews.  *Id.* at 16-20.  Next, she argues that the ALJ failed to follow the agency's own rules in determining the onset date of her disability.  *Id.* at 21-23.  Finally, she argues that the ALJ improperly substituted her own medical judgment for that of a physician.  *Id.* at 24-27.

I.  **THE ALJ'S ANALYSIS OF DR. SANTARPIA'S AND DR. ANDREWS'S OPINIONS**

Jones argues that the ALJ gave too much weight to the opinions of Dr. Santarpia and Dr. Andrews.  *Id.* at 16-27.  Both these sources indicated that Jones's mental impairments were not disabling, at least as of early 2011, and Jones contends that the ALJ insufficiently explained why she gave their opinions "great weight" and "significant weight," respectively.  *Id.*

7

"In rendering a decision, an ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but 'must build a logical bridge from the evidence to [the ALJ's] conclusion.'" *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)) ("the ALJ must *both* identify evidence that supports [the ALJ's] conclusion *and* 'build an accurate and logical bridge from that evidence to [that] conclusion'") (emphasis in original).

Here, the ALJ said that she gave Dr. Santarpia's opinion "great weight" because "it is based on a personal examination of the claimant, is consistent with the results of her examination, and is consistent with the claimant's treatment records indicating that by March 2011 she had shown a marked improvement in her mood and affect." Tr. 32. The ALJ said that she gave Dr. Andrews's opinion significant weight because "[w]hile he did not personal[ly] examine the claimant, his opinion is based on a review of the record that gave him a longitudinal perspective on the claimant's functioning." Tr. 32.

Jones contends that the ALJ's decision to place considerable weight on Dr. Andrews's opinion and its "longitudinal perspective" makes no sense for two reasons. First, Jones notes that the only mental health records that Dr. Andrews reviewed were those of Dr. Santarpia who examined Jones once—in February 2011.[2] Second, Jones notes that Dr. Andrews evaluated the record on March 30, 2011, and Jones's claimed

---

[2] Jones points to the fact that the records from Horizon Health Services are listed after Dr. Andrews's assessment in the list of medical records, Tr. 42, to demonstrate that the Horizon records were not available to Dr. Andrews at the time of his assessment. The Commissioner does not dispute this particular point, and the Court assumes it is correct for the purposes of this decision.

8

onset of disability was just thirty days earlier—on March 1, 2011.  Docket Item 15-1 at 17.  So any "longitudinal perspective" covered the period *before* Jones's onset date and consisted of only one opinion.

This Court agrees.  Because the ALJ's stated reason for giving Dr. Andrews's opinion so much weight appears to have been inaccurate, the ALJ failed to build the "required 'accurate and logical bridge' between the evidence and her conclusion," *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) (quoting *Simila v. Astrue,* 573 F.3d 503, 513 (7th Cir. 2009)).

That being said, the ALJ's faulty reasoning was harmless error.  Although generally, "[a] reviewing court 'may not accept . . . *post hoc* rationalizations for agency action,'" *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999), where "additional analysis would be unnecessary or superfluous" remand is unnecessary.  *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).  Specifically, "an ALJ need not provide superfluous analysis of irrelevant limitations or relevant limitations about which there is no conflicting medical evidence."  *Id.* (quoting *Zatz v. Astrue*, 346 F. App'x 107, 111 (7th Cir. 2009)).

In this case, there is no conflicting medical evidence about the impact of Jones's mental impairments on her abilities between her alleged onset date in March 2011 and the ALJ's determination of Jones's disability onset date in April 2013.   Dr. Andrews's opinion was that based on his review of the records, Jones merely "was moderately limited" in her ability to understand, remember and carry out detailed instructions and in her ability to interact appropriately with the general public. Tr. 259-60.  Dr. Santarpia indicated that as of February 2011, any mental impairment was "mild," and Jones's psychiatric problems were not "significant enough to interfere with the claimant's ability

9

to function on a daily basis." Tr. 245-46.  Moreover, the Horizon records indicate that although Jones's psychiatric issues may have been significant as late as 2010, by March 2011 she showed marked improvement.  Tr. 31.  Indeed, although she was supposed to continue with one-on-one sessions, she stopped attending them in March 2011.  Tr. 31.  And there are no records of any mental health treatment or evaluations of Jones from then until after her application date in April 2013.  In other words, substantial evidence supports the ALJ's conclusion that as of February 2011, Jones's condition was substantially improved, and there are no mental health records suggesting otherwise—in fact, no mental health records at all—until *after* the date the ALJ found Jones to be disabled and entitled to benefits.  For that reason, substantial evidence supports the ALJ's decision.

Jones also takes issue with the ALJ's decision to assign "great weight" to Dr. Santarpia's opinion.  Docket Item 15-1 at 19.  Dr. Santarpia's provided her opinion after a single consultative examination that took place before the claimed onset date.  The ALJ assigned great weight to Dr. Santarpia's opinion "because it is based on a personal examination of the claimant, is consistent with the results of her examination, and is consistent with the claimant's treatment records indicating that by March 2011 she had shown a marked improvement in her mood and affect."  Tr. 32.  Jones argues primarily that the ALJ could not have concluded that Dr. Santarpia's opinion was entitled to "great weight" when, elsewhere in her decision, the ALJ assigned the opinion of a different provider—Donna Miller, D.O.— "limited weight" because that provider "examined the claimant on only a single occasion and there is no indication that she reviewed the claimant's medical records."  Docket Item 15-1 at 19 (quoting Tr. 32).

10

Although the ALJ's reasoning may approach the outer limits of what could be considered a "logical bridge" between the evidence and her conclusion, this Court disagrees with Jones that this explanation constitutes error that would require remand even if it were prejudicial. The ALJ's stated reason for giving "limited weight" to Dr. Miller's opinion is not limited to the fact that she evaluated Jones on a single occasion. The ALJ also explained that she assigned that weight to Dr. Miller's opinion because the record did not indicate that Dr. Miller reviewed Jones's medical records. In contrast, the ALJ stated that she gave Dr. Santarpia's opinion "great weight" not only because of her examination but also because, according to the ALJ, Dr. Santarpia's opinion was consistent with the claimant's treatment records (presumably the records from Horizon). Therefore, Jones's argument that the ALJ failed to provide a logical explanation for assigning great weight to Dr. Santarpia's opinion but less weight to Dr. Miller's opinion fails.

## II. DETERMINATION OF JONES'S DISABILITY ONSET DATE

Social Security Ruling[3] 83-20 provides:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. *This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.*

---

[3] "Social Security Rulings . . . are binding on all components of the Social Security Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the agency] ha[s] adopted." 20 C.F.R. § 402.35(b)(1).

11

(emphasis added). "The Ruling's language does not expressly mandate that the ALJ consult a medical advisor in every case where the onset of disability must be inferred. Nevertheless, if the evidence of onset is ambiguous, the ALJ must procure the assistance of a medical advisor in order to render the informed judgment that the Ruling requires." *Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995). Where "the evidence regarding the onset date is ambiguous . . . the ALJ [does] not have the discretion to forgo consultation with a medical advisor." *Id.*; *see also Thomas v. Chater*, 104 F.3d 357, 1996 WL 730490, at *2 (2d Cir. Dec. 18, 1996) (Table opinion) ("Under SSR 83-20, the ALJ's decision regarding the onset date of disability 'must have a legitimate medical basis' and he 'should call on the services of a medical advisor' if evidence concerning the onset date is ambiguous.").

In this case, the ALJ does not explicitly indicate why she chose April 12, 2013, as Jones's disability onset date. The ALJ most likely chose this date because it is the date on which Jones completed her disability benefit applications. *See* Tr. 157, 163. But the date of completion of a benefits application—without more—cannot be a "legitimate medical basis" for a disability onset date. Stated another way, that date has no significance as to when Jones's mental impairments became sufficiently severe to prevent her from being able to perform substantial gainful activity.

Even under the ALJ's own reasoning, the evidence of onset in this case is ambiguous. The ALJ determined that Jones's "mental impairments worsened and her mental functioning capacity declined in 2013," Tr. 34, but the date on which Jones's mental impairments combined with her other impairments "reached disabling severity remains an enigma." *Bailey*, 68 F.3d at 79. "In the absence of clear evidence

documenting the progression of [Jones's] condition, the ALJ did not have the discretion to forgo consultation with a medical advisor." *Id.*

That being said, any error in failing to comply with SSR 83-20 was harmless to Jones in light of the record as a whole. Where the "evidence would support a finding that the onset date of disability was well *after*" the onset date determined by the ALJ, but the ALJ "somewhat generously select[s]" an onset date, the date chosen does not require remand based on a failure to comply with SSR 83-20. *Chater*, 1996 WL 730490, at *3. In Jones's case, the ALJ determined that Jones's disability onset date was in April 2013. But Jones stopped seeing her mental health provider in early 2011 and did not return to her mental health care provider until June 2013. Tr. 31, 718. Accepting the ALJ's conclusion that Jones's mental impairments were not disabling for some period after her alleged onset date, the record lacks evidence to support the conclusion that Jones's actual onset date could have been much earlier than June 2013, when she returned to her mental health care provider complaining that her mental impairments had returned. Therefore, remand is unnecessary because the ALJ's choice of an April 2013 onset date was, if anything, a "generous select[ion]" of an onset date. *See Chater*, 1996 WL 730490, at *3.

### III. BASIS OF THE ALJ'S RFC DETERMINATION

Jones contends that the ALJ improperly substituted her own medical judgments for that of a physician when determining Jones's RFC. Docket Item 15-1 at 24-27. "While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion or testified before him." *Balsamo*

13

*v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)).  Jones contends that "the ALJ erred by formulating a function-by-function mental RFC without any medical authority." Docket Item 15-1 at 25.  She complains that the ALJ determined that she *did* have some limited impairments from her mental health issues even though the ALJ relied on Dr. Santarpia's opinion which indicated that she "ha[d] no work-related functional limitations." *Id.* at 26.

Jones argument fails to present an actual controversy.  "[T]he fact that the ALJ's RFC assessment did not perfectly match [a medical] opinion, and was in fact more restrictive than that opinion, is not grounds for remand." *Castle v. Colvin*, 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017).  It is the claimant who "bears the initial burden of showing that [her] impairment prevents [her] from returning to [her] prior type of employment." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  Thus, a lack of evidence supporting an ALJ's conclusion that a claimant has a limited mental health disability—in other words, an ALJ's finding that a claimant has some limitations, even when the medical evidence suggests that she has none—is not a reason to remand. This Court declines to remand this case for the ALJ to needlessly strike aspects of Jones's RFC to clarify that she is *less* disabled than the ALJ determined.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 23, is GRANTED, Jones's motion for judgment on the pleadings, Docket Item 15, is DENIED, the complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated: April 9, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE